1

2

3                                                              E-FILED on:    6/4/09

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   SHELLY J. GERACI,                      No. C-07-02113 RMW

13            Plaintiff,                     ORDER DENYING PLAINTIFF'S MOTION
                                             FOR SUMMARY JUDGMENT AND/OR
14        v.                                 REMAND AND GRANTING DEFENDANT'S
                                             CROSS-MOTION FOR SUMMARY
15   MICHAEL J. ASTRUE, Commissioner of      JUDGMENT
     Social Security,
16                                           Re Docket Nos. 16 and 19
              Defendant.
17

18

19

20        Plaintiff Shelly J. Geraci ("Geraci") seeks judicial review of the final decision of the

21   Commissioner of Social Security ("Commissioner") denying her claim for disability insurance

22   benefits prior to June 8, 2005.  Geraci filed this action pursuant to 42 U.S.C. § 405(g) on April 16,

23   2007.  She has filed a motion for summary judgment and/or remand.  The Commissioner opposes

24   the motion and also moves for summary judgment.  The court has considered the moving and

25   responding papers and the entire administrative record.  For the reasons set forth below, the court

26   denies Geraci's motion for summary judgment and grants the Commissioner's cross-motion for

27   summary judgment.

28

**United States District Court**
For the Northern District of California

1

**I. BACKGROUND**

2

    **A.**    **Geraci's Education and Employment History**

3         Geraci did not complete high school beyond eleventh grade and did not obtain a GED. Tr.

4 392. Over the years, Geraci worked as a clerical bookkeeper, legal secretary, and office manager.

5 Tr. 396. Geraci's final job was with Morgan Hill Glass Company. Tr. 392-393. Generally, Geraci

6 worked with the company's mail, processed its billing, and ran errands. *See* Tr. 393-394. Geraci

7 was employed with Morgan Hill Glass for just under six years ending in May 2003. Tr. 392-393. In

8 her last few years at Morgan Hill Glass, Geraci had a modified work arrangement in which she

9 worked from home rather than at the office because her office at Morgan Hill Glass was upstairs and

10 she "wasn't able to go up and down the stairs after the surgeries." Tr. 393.

11

    **B. Geraci's Medical History**

12         In 2000 and 2001, Geraci had extensive low back surgery, including a spinal fusion and a

13 laminectomy. Tr. 165-67. Four times between January 2003 and April 2003 treating physician Dr.

14 Jack Fisher gave an assessment of neuroma and hallux limitus of Geraci's feet. Tr. 203, 204, 206,

15 207. On May 18, 2003, treating physician Dr. Doll assessed "bilateral foot pain secondary to

16 Morton's neuroma and a bunion," and "chronic low back pain secondary to herniated disk," and

17 approved her for surgery. To address the diagnoses, Geraci underwent surgery on May 21, 2003:

18 mayo bunionectomy and excision of neuroma, both on her right foot. Tr. 173. Geraci has not

19 worked since the date of this surgery and she seeks disability benefits commencing this date.

20 Shortly after her foot surgery, Geraci expressed that she had no pain from her neuroma and "feels

21 normal. 100% better." Tr. 192. Though Geraci related that her foot was swollen at the end of June

22 2003, she cancelled her July doctor appointment because she was out of town. Tr. 191.

23         In September and October of 2003, treating physician Dr. Chakerian performed three

24 epidural blocks on Geraci. Tr. 284, 182, 181. After the first epidural procedure, Dr. Chakerian's

25 post-operative diagnosis was probable complex regional pain syndrome of the right foot. Tr. 182.

26 After the two subsequent epidural procedures, Dr. Chakerian's post-operative diagnosis was complex

27 regional pain syndrome. Tr. 181-182. Between September 2003 and May 2005, at least four

28

ORDER DENYING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-07-2113 RMW
AEA/ter               2

physicians diagnosed Geraci with some stage or possibility of Complex Regional Pain Syndrome ("CRPS") or Reflex Sympathetic Dystrophy Syndrome (RSDS), though one physician noted that she did not have RSDS. *See* Addendum 1.

On September 24, 2004, examining physician Dr. Salamacha diagnosed Geraci with right foot pain status post bunionectomy and Morton's neuroma resection with possible history of RSDS, left foot pain with possible future bunionectomy, and chronic pain status post spinal fusion. Tr. 255. Dr. Salamacha gave Geraci a functional assessment of being able to stand and walk for a total of two hours in an eight hour day in 15 to 30 minute intervals and having no restrictions with regards to sitting but "must be allowed to change positions for comfort." Tr. 255. Dr. Salamacha further observed that Geraci could "lift 10 pounds frequently and 20 pounds occasionally," had "no limitations on reaching, handling, feeling, grasping, or fingering," and that Geraci had "no relevant visual, communicative, or workplace environmental limitations." Tr. 255.

On November 29, 2004, Dr. Chakerian noted that she believed that Geraci was disabled and that "much of her disability is currently emotional." Tr. 278. However, very shortly after, on December 1, 2004, examining psychiatrist Dr. Acenas noted that Geraci stated that she "is capable of performing her personal grooming and hygiene," and "does all of the household chores of cooking, cleaning and doing the laundry." Tr. 257. Further, Dr. Acenas noted in her functional assessment

> [Geraci] is able to perform simple and repetitive tasks as well as accepting instructions from supervisors. Basing it only on her mental capacities and not considering physical factors, there is no reason to believe that [Geraci] will not be able to perform work activities on a consistent basis as well as maintain regular attendance and finish a normal workweek. She will likewise be able to deal with the usual stress encountered within a competitive workplace.

Tr. 258.

On February 16, 2005, treating physician Dr. Doll completed an assessment of Geraci in which he diagnosed Geraci with RSDS, but also commented that Geraci had the ability to stand/walk for two to three hours in an eight hour workday and sit for eight hours in an eight hour workday. Tr. 328. On May 23, 2005, treating physician Dr. Chakerian gave an assessment of Geraci in which she claimed that Geraci exhibited severe pain, but noted in parentheses that this was

**United States District Court**
For the Northern District of California

1  "by [patient's] report."  In this assessment, Dr. Chakerian also reported that Geraci could only sit for

2  15 minutes and stand for 5 minutes at a time and that Geraci could sit for a total of two hours in an

3  eight hour workday and stand/walk for a less than two hours in an eight hour workday.  Tr. 345.

4  Finally, on June 8, 2005, treating physician Dr. Doll assessed that Geraci could sit for only two

5  hours in an eight hour workday and stand/walk for less than two hours in an eight hour workday.  Tr.

6  351.  It is this assessment that the ALJ relied on to determine the onset date of disability.

7  **C.      Geraci's Application for Disability Benefits and Hearing**

8          Geraci applied for disability insurance benefits and supplemental security income benefits in

9  May 2004. Tr. 18, 63-68.  The claims were denied initially and on reconsideration, and the

10  Administrative Law Judge ("ALJ") conducted a hearing on December 20, 2005. Tr. 388.  Geraci

11  testified at the hearing, as did Ms. Rouse, Ph.D, a vocational expert who testified regarding the

12  exertional requirements and skill levels of Geraci's prior jobs.  Tr. 410.

13          At the hearing, Geraci explained that her lower back pain prevented her from doing a sitting

14  job.  Tr. 404.  She said that when she sat in one spot for ten minutes her "lower back starts spasming,

15  and then it could take a half-hour to an hour more for it to go away."  Tr. 405.  Geraci went on to

16  discuss her sleeping problems, for which she took sleeping medication and antidepressants, but said

17  it "[didn't] really put [her] to sleep."  Tr. 405.  Further, she explained that at home she had to

18  alternate laying down in a fetal position on her sides and standing with her knees bent every twenty

19  minutes because she "need[s] to get up because of [her] back and she need[s] to get down because of

20  [her] feet."  Tr. 397.  Geraci also testified that after her foot surgery, she fell and "crashed" her foot

21  into a toolbox and that from then on the "[RSDS] just went into full force."  Tr. 397

22          Rouse testified as a vocational expert regarding Geraci's residual functional capacity

23  ("RFC") and the job market for people with Geraci's education and skill.  *See* Tr. 410-12. Rouse

24  classified Geraci's jobs from 1990 to 1998 as sedentary skilled.  Tr. 410.  Further, Rouse noted that

25  it was possible for a person to stand when they needed to in the jobs that Geraci held between 1990

26  and 2003.  Tr. 411.  In addition, Rouse testified that there were no jobs in the national economy for a

27  person between ages 50 and 54, with less than a high school education, who has the RFC to do

28

1    sedentary work with the need to do a sit/stand option, who is limited to unskilled work, and whose

2    previous jobs were all either skilled or semi-skilled.   Finally, Rouse testified that there is no other

3    work that Geraci could do with the restriction of only being able to "stand and walk for a total of two

4    hours in an eight hour work day, and 15 to 30 minute intervals as tolerated with 15 minutes rest

5    between intervals, and assum[ing] rest means no work."   Tr. 412.

6                           **D.    The ALJ's Findings and Conclusions**

7        The ALJ issued a partially favorable decision on February 17, 2006, finding that Geraci was

8    disabled since June 8, 2005, but not prior to that date.  *See generally* Tr. 18-26.  The ALJ first found

9    that Geraci had not been engaged in substantial gainful activity since the alleged onset of disability

10   on May 21, 2003.  Tr. 25 ¶ 2.  The ALJ next found Geraci had "severe" impairments consisting of

11   low back pain post Geraci's 2001 laminectomy and fusion and foot pain post Geraci's 2003

12   bunionectomy and 2004 joint replacement and implant with neurectomy.  Tr. 25¶ 3. Futher, the ALJ

13   found that Geraci's "severe impairments" did not meet or equal the criteria of listed impairments.  Tr.

14   25 ¶ 4.  The ALJ also found Geraci's assertions credible concerning her inability to perform

15   "sedentary" work as of June 8, 2005 and thereafter, but less credible prior to that date.  Tr. 25 ¶ 5.

16   The ALJ concluded that through June 7, 2005 Geraci retained the RFC to perform "sedentary" work,

17   but as of June 8, 2005 she was restricted to "less than 'sedentary' work."  Tr. 15 ¶¶ 6, 7, 9, 10.

18       Because Geraci had an RFC of "sedentary" work prior to June 8, 2005 and because she had a

19   "skilled" work background which was transferrable to perform many simple office clerk and

20   receptionist jobs, the ALJ rendered a finding of "not disabled" for all periods through June 7, 2005.

21   Tr. 26 ¶¶ 13, 15. The AlJ also found, however, that due to Geraci's "additional limitations" as of

22   June 8, 2005, Geraci was disabled as of that date. Tr. 26 ¶ 14.

23                                  **II.   ANALYSIS**

24       Geraci asserts the ALJ's determination of the onset of disability is erroneous in three

25   respects.  First, Geraci contends that the ALJ's finding of Geraci's RFC was not supported by

26   substantial evidence because the ALJ discounted evidence of Geraci's RSDS at step two of the

27   sequential evaluation process.  Pl.'s Mot. Summ. J. 4:9-5:16.  Second, Geraci also takes issue with

28

**United States District Court**
For the Northern District of California

1   the ALJ's finding of the onset of disability contending that the ALJ did not consider all of Geraci's

2   medical impairments and functional limits. *Id.* at 5:17-6:23. Finally, Geraci argues that the ALJ

3   improperly discounted her symptom reporting in determining her credibility. *Id.* at 6:24-9:12.

4       **A.      Legal Standard**

5       The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not

6   supported by substantial evidence or if it is based upon the application of improper legal standards.

7   42 U.S.C. 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence is

8   more than a scintilla but less than a preponderance. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

9   1999). "If the evidence can support either outcome, the court may not substitute its judgment for

10  that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Still, the court must

11  "consider the record as a whole, weighing both evidence that supports and evidence that detracts

12  from the [ALJ's] conclusion." *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where evidence

13  exists to support more than one rational interpretation, the court must defer to the ALJ's decision.

14  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Sandgathe v. Charter*, 108 F. 3d 978, 980 (9th

15  Cir.1997). Further, an ALJ's finding will not be reversed for errors that are harmless. *Burch*, 400

16  F.3d at 679.

17  .

18      **B.      The ALJ's Residual Functional Capacity Finding**

19      Geraci asserts that the ALJ erred in finding her RFC of sedentary work prior to June 8, 2005

20  because she contends that the ALJ improperly discounted evidence of her RSDS. Pl.'s Mot. Summ.

21  J. 4:12-5:5. She argues that the ALJ did not refer to SSR 03-02p, which sets forth the process to

22  evaluate cases involving RSDS/CRPS. *Id.* at 5:6. Geraci contends that by failing to follow SSR 03-

23  02p and by ignoring Geraci's RSDS at step 2, the ALJ erred even though he found that Geraci had

24  severe impairments. Defendant argues that Geraci does not demonstrate that her alleged RSDS

25  resulted in any additional limitations than those stemming from her spine and foot impairments

26  which were found to be severe. Geraci only asserts that the ALJ erred in failing to consider her

27  RSDS, but does not give any indication as to how consideration of it would have resulted in a

28

1    different disposition.  In short, Geraci has failed to explain how the ALJ's consideration of her RSDS

2    would have materially affected his decision.

3           The ALJ found that Geraci has severe impairments of low back pain and foot pain.  Tr. 25.

4    Geraci has not established how the ALJ's consideration of her RSDS could have resulted in any

5    different finding at step two.  Assuming the ALJ erred in failing to consider RSDS at the second

6    step, the court finds that this error was harmless as there is sufficient evidence to support the ALJ's

7    RFC findings at the fourth step.  *See Burch*, 400 F.3d at 679.  If the ALJ did explicitly consider

8    RSDS at the second step, he would have either found that it was or was not a severe medically

9    determinable impairment.  Even if the ALJ found Geraci's alleged RSDS to be a severe medically

10   determinable impairment at step two, the record provides functional assessments by an examining

11   physician, Dr. Salamacha, and a treating physician, Dr. Doll, that support a finding that Geraci was

12   capable of performing sedentary work prior to June 8, 2005.  In her comprehensive orthopedic

13   evaluation on September 24, 2004, Dr. Salamacha found that Geraci could stand/walk for two hours

14   in an eight hour day and had "no restrictions with regard to sitting but must be allowed to change

15   positions for comfort."  Tr. 255.  Further, in a medical source statement dated February 12, 2005, Dr.

16   Doll diagnosed Geraci with RSDS of both feet, but also assessed that Geraci could stand/walk for

17   two to three hours in an eight hour day and sit for eight hours in an eight hour work day.  Tr. 328.

18   Even if the evidence can support another outcome, this medical evidence in the record constitutes

19   substantial evidence supporting the ALJ's finding of an RFC of sedentary work prior to June 8,

20   2005.  *See Matney,* 981 F.2d at 1019.

21          **C.     The ALJ's Determination of Onset Date of Disability**

22          Geraci next asserts that the ALJ erred in assessing the onset date of her disability because he

23   did not take into account all of Geraci's medical impairments and functional limits and because he

24   rejected the opinion of treating physician, Dr. Chakerian.  Pl.'s Mot. Summ. J. at 5:19-6:23.  Further,

25   Geraci contends that the ALJ failed to apply SSR 83-20 because he did not take testimony from an

26   advisor medical expert or take into account Geraci's work history.  *Id.*

27

28

ORDER DENYING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-07-2113 RMW
AEA/ter                                                  7

1

### 1.     ALJ's Rejection of Dr. Chakerian's Opinion

An ALJ can reject the uncontradicted opinion of a treating or examining doctor if he provides clear and convincing reasons that are supported by substantial reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ can reject a contradicted treating or examining doctor's opinion only by "providing specific and legitimate reasons that are supported by substantial evidence."  *Id.*  Further, when evaluating conflicting medical opinions, the ALJ need not accept doctors' opinions that are brief, conclusory, and inadequately supported by clinical findings.  *Id.*

The court finds that the ALJ provided specific and legitimate reasons supported by evidence to reject Dr. Chakerian's May 2005 RFC assessment that Geraci could sit for only two hours in an eight hour workday, could stand/walk for less than two hours, and would need more than ten unscheduled breaks.  Tr. 342-47.  The ALJ noted that he rejected Dr. Chakerian's proposed RFC determination because it was "not supported by objective medical signs and laboratory findings" and because it was "contradicted by the less restrictive RFC of Dr. Doll based on a clinical finding of negative straight leg-raising signs in January 2005."  Tr. 23.  Further, the ALJ refused to accept Dr. Chakerian's opinion that "[p]atient's mental state is liable and . . . at least as disabling as her physical complaints," (Tr. 347) because she was not a mental health specialist and Geraci was not referred by any of her treating physicians for a psychological evaluation until December 14, 2005.  Tr. 23.

There was also substantial medical evidence that supported the ALJ's rejection of Dr. Chakerian's limited RFC.  Specifically, treating physician Dr. Doll gave an RFC that supported a finding of sedentary work on February 12, 2005, noting that Geraci could sit for eight hours in an eight hour day and stand/walk for two to three hours a day.  Tr. 328.  The ALJ is entitled to give controlling weight to the findings of a treating source if he finds they are well-supported and consistent with the record as a whole.  20 C.F.R. § 404.1527 (d)(2).

### 2.     SSR 83-20

Geraci contends that the ALJ should have called on an advisor medical expert because inference of onset date is necessary in this case since "there is no traumatic cause or apparent

United States District Court
For the Northern District of California

1    medical reason for a sudden onset." Pl.'s Mot. Summ. J. 6:13-6:17.  SSR 83-20 sets forth guidelines

2    for determining the onset date of disability.  It directs that the judgment regarding the onset date of

3    disability "must have a legitimate medical basis" and that the ALJ "should call on the services of a

4    medical advisor when onset must be inferred." SSR 83-20.  The Ninth Circuit has explained this

5    ruling to mean that "[i]n the event that the medical evidence is not definite concerning the onset date

6    and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a

7    medical advisor and to obtain all evidence which is available to make the determination." *DeLorme*

8    *v. Sullivan*, 924 F.2d 841, 848 (9th Cir.1991).  In other words, if the medical evidence is definite

9    concerning the onset date, then there is no requirement for the ALJ to call on the services of a

10   medical advisor.

11           Here, a medical advisor was not required because there was definite medical evidence that

12   supported the onset date found.  The ALJ based his onset date finding on a legitimate medical basis:

13   among other things, Geraci's treating physician's assessment.  Dr. Doll has treated Geraci since

14   2001. *See* Tr. 179.  As discussed above, Dr. Doll noted on February 12, 2005 that Geraci could sit

15   for eight hours in an eight hour day and stand/walk for two to three hours a day, thus supporting an

16   RFC finding of sedentary work.  Tr. 328.  Later, on June 8, 2005, Dr. Doll issued a more restrictive

17   assessment where he noted that Geraci could sit for only two hours in an eight hour work day and

18   stand/walk for less than two hours a day.  Tr. 351.  The ALJ relied on this medical evidence and Dr.

19   Salamacha's comprehensive orthopedic evaluation to support his finding of onset of disability.

20   These medical evaluations and opinions provided definite evidence concerning an onset date, and, as

21   a result, the ALJ was not required to call upon a medical advisor, as medical inferences were

22   unnecessary.  Thus, the ALJ did not err in failing to utilize a medical advisor, and the ALJ's onset

23   date finding is supported by substantial evidence.

24           **D.    The ALJ's Consideration of Plaintiff's Symptom-Reporting**.

25           Geraci's final argument is that the ALJ improperly discounted her symptom-reporting prior

26   to the onset date and contends that she would have been found disabled during the whole period at

27   issue if her "statements about symptoms and difficulties had been accredited."  Pl.'s Mot. Summ. J.

28

at 7:12-7:14.  On this issue, the Ninth Circuit has instructed that "an [ALJ] may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by claimant is not supported by objective medical evidence." *Penny,* 2 F.3d at 957.  Further, an ALJ's reasons for rejecting a claimant's testimony must be "clear and convincing." *Regennitter v. Commissioner of Social Sec. Admin,* 166 F.3d 1294, 1296 (9th Cir. 1999).  SSR 96-7p lists a number of factors an adjudicator must consider in addition to objective medical evidence when assessing the credibility of an individual's statements. These factors are:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Here, the ALJ found Geraci's subjective complaints to be credible to the extent that she "contends that since June 8, 2005, she has been unable to sustain even 'sedentary' work," but less than fully credible to the extent that "prior to June 8, 2005, she would have been unable to perform 'sedentary' work." Tr. 23.  The ALJ discussed objective medical evidence that supported his finding of credibility and also specifically discussed Geraci's daily activities, the side effects of her medication, and her own subjective statements about her pain.  The ALJ considered Geraci's allegations of "severe back pain and [RSDS], along with mental limitations both from pain and as a result of side effects from the medications she takes to control those pains." Tr. 22.  The ALJ observed that at least circa December 2004, Geraci was able to drive, shop for groceries, talk on the telephone, dust, do laundry, do dishes, and prepare meals. Tr. 22.  Further at this time, Geraci was able to construct lengthy written correspondence, "presumably while seated." Tr. 22.  The ALJ also pointed out that after Geraci's May 2003 bunionectomy she reported to her physician that she felt "no pain from her neuroma" and that it was "100% better." Tr. 22 (citing Tr. 192).  Further, the ALJ stated and the record indicates that Geraci reported that she wanted to continue taking OxyContin

United States District Court
For the Northern District of California

because it caused no side effects. Tr. 20 (citing Tr. 279). Thus, the ALJ did not discredit Geraci's subjective complaints *solely* because the alleged pain is not supported by objective medical evidence, but also because her daily activities and her subjective statements about her pain indicate that she was able to perform duties. Although the ALJ did not explicitly cite SSR 96-7p when evaluating them, his analysis addressed many of the factors to be considered. The ALJ's reasons for discounting the pain testimony prior to June 8, 2005 are clear and convincing.

Geraci also suggests that the ALJ erred by skipping the first step of the two-part evaluation of credibility set forth by SSR 96-7p. The two-step process for evaluating pain includes: (1) determining whether there is "an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain," (SSR 96-7p; *Vasquez v. Astrue*, 547 F.3d 1101 (9th Cir. 2008)(citing *Lingfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)) and (2) if there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez v. Astrue*, 547 F.3d at 1104-05 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). An ALJ reaches the second step only if he establishes that the inquiry at step one is answered in the affirmative. Thus, an ALJ considers the second inquiry "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain . . . has been shown." SSR 96-7p. Here, the ALJ expressly found that Geraci's severe impairment included low back pain and foot pain. The only remaining step was to evaluate the claimed intensity in view of the various factors set forth in SSR 96-7p setting forth specific reasons for rejecting the claimant's pain testimony. The ALJ specifically addressed many of the factors.

Geraci asserts that the ALJ erred in failing to address her specific testimony when he rejected it. Geraci does not, however, cite to any portion of the record that would establish RSDS during the period at issue. Geraci points out that she testified that her "RSD[S] symptoms came on 'full force' . . . after a fall plus a foot injury, all within a month of her second right foot surgery . . . , which was on March 29, 2004." Pl.'s Mot. for Summ. J. 7:2-7:5. The ALJ expressly addressed this allegation,

United States District Court
For the Northern District of California

1  stating that "[o]n April 26, 2004, the claimant informed that she had fractured her left foot," and

2  went on to refute the testimony because "she did not desire surgery for the injury at that time" and

3  "[c]irca May 2004, the claimant reported that she was feeling 'fairly well' post right foot surgery, and

4  her back was also 'better.'" Tr. 20.  Moreover, the ALJ explicitly acknowledged Geraci's

5  "alleg[ations] of severe back pain and RSD[S], along with mental limitations both from pain and as a

6  result of side effects from medications she takes to control those pains" before addressing the factors

7  that weighed against her credibility.  Tr. 22.

8        Plaintiff's argument is unpersuasive and the court finds that there is substantial evidence in

9  support of the ALJ's credibility findings and his reasons for rejecting plaintiff's claims of pain are

10  clear and convincing.  Thus, the ALJ's findings must be given deference.  *See Sullivan*, 981 F.2d at

11  1019.

12

13

14                                    **IV. ORDER**

15        For the forgoing reasons, the court denies Geraci's motion for summary judgment, denies

16  Geraci's motion for remand, and grants defendant's cross-motion for summary judgment.

17

18  DATED:        5/26/09                      *Ronald M Whyte*

19                                    RONALD M. WHYTE
                                      United States District Judge

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-07-2113 RMW
AEA/ter                                12

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

James Hunt Miller                    jim_miller0@yahoo.com

**Counsel for Defendants:**

Elizabeth Firer                     Elizabeth.Firer@ssa.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**    6/4/09                         TER
                                   **Chambers of Judge Whyte**

United States District Court
For the Northern District of California

ORDER DENYING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-07-2113 RMW
AEA/ter                              13

1

Addendum 1

2

| Date | Doctor | Diagnosis | Transcript |
|------|--------|-----------|------------|
| 9/2/2003 | Chakerian | Probable RSDS Lower Limb | Tr. 292 |
| 9/8/2003 | Chakerian | Probable CRPS right lower extremity | Tr. 284 |
| 9/24/2003 | Chakerian | CRPS right foot | Tr. 182 |
| 10/29/2003 | Chakerian | CRPS | Tr. 181 |
| 11/3/2003 | Warne | possible CRPS | Tr. 294 |
| 11/18/2003 | Chakerian | RSDS of the lower limb | Tr. 290 |
| 1/15/2004 | Chakerian | RSDS of the lower limb | Tr. 288 |
| 3/18/2004 | Chakerian | RSDS of the lower limb | Tr. 286 |
| 3/28/2004 | Warne | "possible initial signs and symptoms of CRPS in [right foot]" | Tr. 213 |
| 4/22/2004 | Chakerian | RSDS of the lower limb | Tr. 285 |
| 5/18/2004 | Chakerian | RSDS of the lower limb | Tr. 284 |
| 5/18/2004 | Doll | CRPS and likely RSDS of the right leg | Tr. 333 |
| 6/10/2004 | Chakerian | RSDS of lower limb | Tr. 283 |
| 8/10/2004 | Chakerian | RSDS of lower limb | Tr. 281 |
| 8/23/2004 | Corazon | "does not have RSD" | Tr. 236 |
| 9/14/2004 | Doll | CRPS with RSDS and pain in right foot | Tr. 331 |
| 9/16/2004 | Chakerian | "The CRPS symptoms seem to have resolved" | Tr. 280 |
| 9/24/2004 | Salamacha | "possible history of [RSDS] without evidence of acute inflammatory phase at this time" | Tr. 256 |
| 10/14/2004 | Chakerian | RSDS of lower limb | Tr. 279 |
| 11/29/2004 | Chakerian | RSDS of lower limb | Tr. 278 |
| 5/23/2005 | Chakerian | Assessed that Geraci had RSDS and that she needed more than 10 unscheduled breaks in a work day | Tr. 342 |
| 6/8/2005 | Doll | Assessed that Geraci had RSDS and that she needed more than 10 unscheduled breaks in a work day | 6/8/2005 |

ORDER DENYING PLAINTIFF'S FIRST MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
No. C-07-2113 RMW
AEA/ter

14

**United States District Court**
For the Northern District of California